IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY D. CAIREL and | ) | |
| MARVIN JOHNSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 09 C 1878 |
| vs. | ) | |
| | ) | JUDGE GRADY |
| CHICAGO POLICE DETECTIVES | ) | |
| JACOB ALDERDEN, et al. | ) | |
| Defendants. | ) | |

**FILED**
**SEPTEMBER 14, 2009**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COME Plaintiffs, JEREMY D. CAIREL and MARVIN JOHNSON, by their attorney, JEFFREY J. NESLUND, and in response to Defendant's Motion to Dismiss Plaintiffs' Complaint, state as follows:

### INTRODUCTION

The Defendants have filed a motion to dismiss Plaintiff's complaint pursuant to F.R.C.P. 12(b)(6). Defendants argue that Plaintiffs Due Process claim (Count I) is "an attempt to transform a time-barred false arrest claim into a timely due process claim" (Deft.'s Mtn, p. 5,6) and inadequately pled (Deft.'s Mtn. p.7); Plaintiffs' Conspiracy claim (Count II) is "vague and speculative" (Deft.'s Mtn. p. 12); and Plaintiffs' claim for Intentional Infliction of Emotional Distress (Count IV) is time-barred (Deft.'s Mtn. p. 13).

The Defendant's arguments are without merit and should be denied because the detailed allegations in Plaintiffs' complaint establish the Defendants

conspired to fabricate false confessions from a mentally challenged Jeremy Cairel as well as manipulate and falsify identification procedures in violation of the Plaintiffs Due Process rights. This "frame up," as accurately described by the Defendants, took the form of identification manipulation and the creation of fictitious confessions **after** the Plaintiffs initial arrest. Such misconduct constitutes a *Brady* violation because it is material evidence which, had it been known to the prosecution, would have precluded the charges entirely.

The fact the criminal charges were ultimately dismissed by the Cook County States's Attorney's Office fourteen (14) months after the arrest does not extinguish the due process violations. The 14th Amendment does not, nor should it, require an individual suffer through a trial, conviction and then post trial remedies in order to claim their fair trial rights have been violated. The timing of the ultimate favorable outcome in the Plaintiff's criminal case speaks only to the amount of damages due and is irrelevant to whether there is a cause of action for a violation of due process rights to a fair trial.

## LEGAL STANDARD

The purpose of a 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990); *Federal Practice and Procedure Section 1356, at 354 (3rd Ed. 2004)*. When evaluating such a motion, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hentosh v. Herman M. Finch University of Health Sciences,* 167 F.3d 1170, 1173 (7th Cir. 1999). Heightened fact pleading of specifics is not required in Federal complaints. *Killingsworth v. H.S.B.C. Bank of Nevada,* 507 F.3d 614, 618 (7th Cir. 2007). A

complaint must "contain enough facts to state a claim of relief that is plausible on its face." *Id.* A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## ARGUMENT

### I. Plaintiff's Due Process Claim is Adequately Pled and Not Time-Barred

Plaintiffs have articulated a due process claim because the Defendants failed to disclose material, exculpatory evidence that prejudiced the Plaintiffs. This caused the criminal prosecution to go forward unnecessarily for fourteen (14) months. Defendants first argue that Plaintiffs' due process claim (Count I) is time- barred because they were "clearly aware of the fact that they were being "falsely implicated" on the date of their arrest on January 24, 2007. (Deft.'s Mtn. p.5). This argument is without merit. Defendants correctly state that in Illinois the statute of limitations period for a section 1983 claim is two years. However, a 1983 claim for a due process violation based on the denial of fair trial rights begins when the criminal case is set aside. *Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008). The criminal charges in this case were dismissed on March 26, 2008 and this lawsuit was filed one year later on March 26, 2009. As such, the due process claim is timely.

Defendants next argue that the due process claim is an improper attempt to transform the time-barred false arrest claim into a timely due process claim. (Deft.'s Mtn. p. 5, 6). However, Defendants overlook Plaintiffs's allegations that the Defendants conspired *after* the initial arrest to manipulate and tamper with identification evidence and take advantage of Cairel's mental deficits. These due process violations are more

than a Fourth Amendment false arrest claim by another name. Plaintiffs' complaint alleges misconduct that goes beyond the initial seizure and encompasses constitutional torts in addition to simply initiating criminal proceedings with malice in the absence of probable cause, i.e., a state claim for malicious prosecution. Defendants even concede on page 6 of their motion that the "alleged *Brady* violation" is not an attempt to transform a false arrest claim into a timely due process claim. (Deft.'s Mtn. p. 6).

Defendants go on to argue that the allegations in Count I are inadequately pled and based "solely on assumption and speculation" (Deft.'s Mtn. p. 7) and insufficient to state a claim under *Brady*. (Deft.'s Mtn. 9-11). Defendant's arguments fail because the allegations outlined in Plaintiffs complaint articulate a specific factual basis for the due process violations. Had such material exculpatory evidence such as false line up identifications and false confessions from a mentally challenged Cairel been disclosed, it would have precluded the charges entirely. See *Bielanski v. County of Kane*, 550 F.3d 632, (7th Cir. 2008) (due process claim analyzed to determine whether disclosure of exculpatory evidence would have precluded charges entirely) and *Carvajal v. Dominguez, 542 F.3d 561, 569(7th Cir. 2008)* (due process claim analyzed to determine whether the decision to go to trial would have been altered by the desired disclosure).

### A. Plaintiff's Due Process and Conspiracy Claims Are Not Based on Assumption and Speculation

Defendants argue Plaintiffs Due Process claim (Count I) and Conspiracy claim (Count II) are "vague, and speculative and inadequately pled." (Deft.s Mtn. p. 7, 12). Plaintiff's complaint contains sufficient factual content (i.e. that the Defendants used improper and suggestive techniques to manipulate and falsify identification procedures

and took advantage of Plaintiff Cairel's mental deficits to coerce him into signing false written confessions ) which, accepted as true, allows the Court to draw reasonable inference that the Defendant Officers conspired to violate the Plaintiffs' fair trial rights and committed a constitutional tort by intentionally withholding such material evidence in violation of *Brady*.

The Defendant's reliance on the Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009) are misplaced. In *Twombly*, the plaintiff alleged the defendant telecommunication providers had entered into a "contract, combination or conspiracy" not to compete with one another in violation of the Sherman Antitrust Act. *Twombly,* 550 U.S. at 551. The plaintiff's also alleged that the defendant's "parallel course of conduct . . . to prevent competition" and inflate prices was indicative of the unlawful agreement alleged. *Id.* The Court held that the plaintiff's assertion of an unlawful agreement was a "legal conclusion" and, as such, was not entitled to the assumption of truth. *Id* at 555. The *Twombly* Court further held the parallel conduct alleged "did not plausibly suggest an illicit accord because it was not only compatible with, but was indeed more likely explained by, lawful, un-choreographed free-market behavior. *Id.* Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiff's complaint must be dismissed. *Id.* at 570.

In *Ashcroft,* the plaintiff alleged unconstitutional discrimination in the detention and confinement of Arab Muslims following the September 11th terrorist attacks. Plaintiffs alleged certain officials "knew of, condoned, and willfully and maliciously agreed to harsh conditions of confinement as a matter of policy, solely on account of his

religion, race and/or national origin and for no legitimate peneological interest." *Ashcroft, 129 S. Ct. at 1944* The Court found these bare assertions were "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim," and, therefore, not entitled to an assumption of truth. *Id.* at 1951 The Court further held that the factual allegations in the complaint failed to establish that the defendants purposefully housed detainees due to their race, religion, or national origin. The Court explained:

> " All it plausibly suggests is that the nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudge" his claim of purposeful discrimination across the line from conceivable to plausible." *Id.* at 1952 citing *Twombly*, 550 U.S. at 570.

Unlike *Twombly* and *Ashcroft*, the allegations in Plaintiff's complaint are not merely labels, conclusions or a formulaic recitation of the elements of a cause of action. Rather, Plaintiff's complaint specifically alleges that the Defendant Detectives and Officers conspired to take advantage of Plaintiff Cairel's mental deficits to create false written confessions and manipulated and falsified identification procedures. (See Plaintiffs' Complaint ¶ 6, 19-24). This "frame up" was done with full knowledge by the Defendants that the physical characteristics of the Plaintiffs did not come close to the descriptions of the offenders by the two robbery victims. (See Complaint ¶ 9-15).

These specific allegations plausibly suggest that the Plaintiffs have a right to relief that is above a speculative level. The fact that the Cook County State's Attorney's

Office ultimately dismissed the criminal charges contradicts the Defendants' argument that a "far more likely explanation" is that the plaintiffs were actually implicated in the two robberies. (Deft.'s Mtn. p. 7, 8). The reasonable inferences from the allegations in Plaintiffs' complaint is that the Defendant Detectives and Officers engaged in a conspiracy to violate the Plaintiffs' rights to a fair trial by withholding material, exculpatory evidence that would have precluded the charges entirely.

### B. Plaintiffs' Complaint Adequately Identifies the Misconduct of the Individual Defendant Officers and Detectives

Defendant's argument that plaintiffs' complaint "largely fails to link alleged misconduct with specific named defendants" (Deft.'s Mtn. p. 8) is without merit. Plaintiffs' complaint identifies the specific time, date and location of the alleged misconduct. (Plaintiffs' Complaint ¶16-24). The complaint further identified five (5) specific Detectives and two (2) Officers by name as defendants. Contrary to Defendant's argument, Detectives Vogenthaler and Demato are included by reference in all allegations in which the complaint refers to "Defendant Detectives." Thus, the complaint provides sufficient detail to give the Defendants fair notice of what the claims are and the grounds upon which they rest.

Furthermore, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). In short, Count I of Plaintiff's complaint is adequately pled because (a.) it provides sufficient detail to give the Defendants fair notice of the claims and (b.) unlike *Twombly* and *Ashcroft*, contains

sufficient factual matter which, accepted as true, suggests the Plaintiffs have a right to relief that is plausible on its face.

## II. Dismissal of the Criminal Charges Does Not Extinguish Plaintiff's Due Process Claims

Defendants argue that Plaintiffs' due process claims are not *Brady* violations because the charges were ultimately dismissed (Deft. Mtn. p. 11) and therefore "there was no prejudice and thus no violation of due process." (Deft's Mtn. p.12). This argument is illogical and without merit. Significant prejudice resulted from the police violations of *Brady* in this case. Plaintiffs were charged with not one, but two (2) separate armed robberies because of the Defendants misconduct. The failure of the Defendants to disclose exculpatory evidence damaged the Plaintiffs by unnecessarily prolonging the proceedings for fourteen (14) months. The harm resulting from police misconduct and willful withholding of exculpatory evidence starts long before any trial, and deserves recompense even if the plaintiff eventually prevailed in the criminal proceeding. The Defendants even concede on page 11 of their motion that *Bielanski* left open the question of "whether a Brady violation whose revelation would have resulted in a pre-trial dismissal of the charges is actionable." (Deft.s Mtn. p. 11).

The *Bielanski* court noted there is a difference of opinion within other circuits regarding *Brady* claims when a defendant is acquitted or charges are dropped. *Bielanski*, 550 F.3d at 644 citing in part *Haupt v. Dillard*, 17 F.3d 285, (9th Cir. 1994)( defendant's acquittal goes to damages and is irrelevant to whether he has a cause of action for a violation of his due process rights). The Supreme Court has yet to address the issue. *Id*.

The Seventh Circuit has allowed federal due process claim for *Brady* violations, in addition to state malicious prosecution and false arrest claims. *Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir.2001); *see also Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1026 (N.D.Ill.2003). As the Seventh Circuit explained in *Newsome*, Brady obligations extend to police officers and requiring culpable officers to pay damages to the victims of their actions "holds out the promise of both deterring and remediating violations of the Constitution." *Id*. at 752. This is consistent with the purpose of the *Brady* rule which is to "ensure that a miscarriage of justice does not occur." *Bielanski*, 550 F.3d at 645 citing *U.S. v. Bagley*, 473 U.S. 667, 675(1985).

Defendant's reliance on *Carvajal v. Dominguez*, 542 F.3d 561, 569( 7th Cir. 2008) is misplaced. In *Carvajal*, the court held there was no *Brady* violation where an undercover officer viewed a photograph of an accused money laundering courier in an undercover operation. The accused courier was subsequently acquitted in a criminal trial and sued an undercover D.E.A. agent. *Id*. at 565. The court held there was no *Brady* violation because there was no "reasonable probability" that disclosure of the agent's viewing the courier's photograph would have suppressed the identification of the courier or resulted in the charges being dropped. *Id*. at 568.

In this case, the exculpatory evidence the police withheld was highly significant. Unlike the situation in *Carvajal*, there was more than a "reasonable probability" that disclosure of the police misconduct would result in the charges being dropped; the charges were, in fact, abandoned by the prosecution. (Plaintiff's Complaint ¶ 25). The withholding of exculpatory information denied the Plaintiff's their due process rights to a fair trial and caused the prolonged prosecution of the Plaintiffs. The disclosure of the

exculpatory evidence and the truth of the fabricated evidence would have prevented the prosecutor from instituting the charges and proceeding with the prosecution at all. See *Jones v. City of Chicago,* 856 F.2d 985, 993, 995-6 (7th Cir. 1988); see also *Craig v. Chicago Police Officers*, No. 05 C 0172, 2005 WL 1564982, at *3 (N.D.Ill. Jun 09, 2005) and *Curtis v. City of Chicago*, No. 01 C 8004, 2002 WL 31803597 at *4 (N.D.Ill., December 13, 2002)( J. Darrah)( plaintiff sufficiently alleged a due process violation after a *nolle prosequi* because the initiation of criminal charges were based on the falsified police records).

The instant case, unlike *Carvajal*, it is a "reasonable probability" the prosecutor would never have gone forward with the charges had the police provided their exculpatory evidence as *Brady* requires. Because the case did move forward, Plaintiffs suffered significant damages which should be compensated by the responsible Defendant officers.

### III. The Manipulation and Creation of False Identifications and Fabrication of Written Confessions from a Mentally Challenged Plaintiff Are Exculpatory and Material Information Withheld in Violation of *Brady*.

Defendants argue the exculpatory information regarding the false identifications and Plaintiff Cairel's false confessions cannot be regarded as "suppressed" in the *Brady* sense because Plaintiffs knew they were being "falsely implicated" at the time of their arrest and "could have discovered any manipulating of or tampering with witness statements and identification procedures through reasonable diligence." (Deft's Mtn. p. 10). Yet Defendants fail to articulate *how* Plaintiffs were expected to discover such

misconduct on the part of the Defendant Detectives and Officers prior to the dismissal of the charges. Again, Defendants reliance on *Carvajal* is misplaced.

In *Carvajal*, there was a suppression hearing in the criminal case in which the plaintiff drug courier had an opportunity to "probe the witnesses and investigate their versions of events." *Carvajal,* 542 F.3d at 567. The *Carvajal* court held that the fact the D.E.A. agent saw a photo of the drug courier was not exculpatory, impeaching or "suppressed" because there was nothing preventing the plaintiff from discovering and drawing out discrepancies between the officer's stories during the criminal suppression hearing. *Id*.

In the instant case, there was no such opportunity for the Plaintiffs to probe the Defendants regarding the falsification of written statements or manipulation of identification procedures. Unlike the situation in *Carvajal*, the defendants were not accessible to the Plaintiffs in any type of criminal suppression hearing. Without an opportunity to examine any of the Defendants in the criminal proceedings, no "reasonable diligence" on the part of the Plaintiffs could have discovered the Defendants manipulated and falsified the identification procedures.

Defendants also argue that the Plaintiff Cairel's fabricated confessions to two (2) armed robberies cannot be considered *Brady* violations because he was present for his interrogation and can testify to what happened. (Deft.'s Mtn. p. 9). Defendant's argument ignores the mental deficits of Plaintiff Cairel, who has auditory memory skills at a kindergarten/first grade level. (Plaintiffs Complaint ¶ 6). It is precisely this mental handicap that the Defendants took advantage of in order to fabricate Mr. Cairel's false

confessions. This is quite a different situation from the case relied upon by the Defendants, *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007).

In *Harris*, a pardoned prisoner alleged, in part, that police officers committed a *Brady* violation when they lied to prosecutors about his affiliation with another inmate who confessed to his crime. *Harris*, 486 F.3d 1010, 1016. The *Harris* court explained that a police officer's false statement to a prosecutor is not a *Brady* violation because "the Constitution does not require that police testify truthfully; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies." *Id*. at 1017, citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006). The *Harris* court denied the plaintiff's *Brady* claim regarding the officers false statements to the prosecutor because the plaintiff knew that he did not have a relationship with the other inmate and "was fully capable of challenging the officers' and prosecutors' contention to the contrary." *Id.*

Unlike *Harris* and *Carvajal*, there was no trial or any other hearing in the criminal proceedings in which the Plaintiffs had an opportunity to challenge or probe the Defendants regarding their misconduct. The "foreclosed extension" of *Brady* to false statements by police to prosecutors referred to in *Harris* applies to trial situations where jurors can determine "where the truth lies." *Id.* The situations described *Harris* and *Carvajal* do not apply to the instant case. Contrary to the Defendants argument, there was no failure on the part of the Plaintiffs to use "reasonable diligence" to discover the Defendants manipulated and tampered with material evidence. As outlined above, had such material evidence been disclosed to the prosecution, it certainly would have precluded the charges entirely.

IV.  **Plaintiff's Claim for Intentional Infliction of Emotional Distress is a "Continuing Tort" and Not Time-Barred**

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should have been filed within one year of the arrest on January 24, 2007, and is therefore, time barred. (Deft's Mtn. p. 13). Defendant's argument fails because under Illinois law the tort of intentional infliction of emotional distress is a "continuing tort. " *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75 (2003). Under the "continuing tort" or "continuing violation" rule, the limitations period does not begin to run until the last date of the last injury or the date the tortuous acts cease. *Id*. 207 Ill. 2d 278 (citations omitted).

In the instant case, the Defendants continued to suppress material, exculpatory evidence from January 24, 2007 through the entire fourteen (14) months the criminal charges were pending against the Plaintiffs. The Plaintiffs were at risk of conviction during this entire time period solely due to the continuing tortuous misconduct of the Defendants. The tortuous acts of the Defendants, i.e. the conspiracy to deny the Plaintiffs their due process rights and suppress exculpatory evidence, did not cease until the dismissal of the criminal charges on March 26, 2008. Plaintiffs complaint was filed within one year of the dismissal and is therefore timely. As such, defendant's motion should be denied.

## CONCLUSION

Defendant's motion to dismiss should be denied because Plaintiff's complaint, taken as true, contains specific allegations of a conspiracy to deny the Plaintiff's their due

process rights to a fair trial. The fact the criminal charges were ultimately dismissed does not alter the fact the Defendants withheld material, exculpatory evidence that would have prevented the prosecution entirely. The alleged police misconduct, such as manipulating false identification procedures and fabricating written confessions from a mentally handicapped Jeremy Cairel, are constitutional torts that encompass much more than a state malicious prosecution claim. Plaintiff has alleged specific *Brady* violations which denied the Plaintiff's their due process rights to a fair trial and caused the prolonged prosecution of the Plaintiffs for fourteen (14) months.

The purpose of the *Brady* rule is to "ensure that a miscarriage of justice does not occur." *Bielanski*, 550 F.3d at 645 citing *U.S. v. Bagley*, 473 U.S. 667, 675(1985). The "miscarriage of justice" the *Brady* rule is aimed to prevent is not limited to situations in which an individual is tried, convicted and later discovers suppressed exculpatory evidence. Due Process *Brady* violations encompass the police misconduct alleged here, where the police manufacture evidence and withhold exculpatory evidence to the detriment of the Plaintiffs. Therefore, Plaintiffs respectfully request this Court deny Defendant's motion to dismiss.


Respectfully submitted,

/s/ Jeffrey J. Neslund
Attorney for Plaintiff



Law Offices of Jeffrey J. Neslund
150 N. Wacker Drive, Suite 2460
Chicago, IL 60606
(312) 223-1100